RICH et al. v. BRAY et al.

(*Circuit Court, W. D. Missouri, C. D.* January 14, 1889.)

1. COURTS—FEDERAL JURISDICTION—EQUITY—EXECUTORS AND ADMINISTRATORS.

The federal courts will take equity jurisdiction of a bill by non-resident heirs at law against resident heirs to compel an accounting of the property of their intestate in the hands of the defendants, and for a distribution of the estate, notwithstanding the remedy of complainants under the probate law of the state, when the bill alleges facts evoking the exercise of the powers of a court of chancery, such as that there has been no administration after the lapse of five years; that defendants have wrongfully appropriated the whole estate to their use, traded and speculated upon it, changing the original form of some of the property, made profits thereon, and been guilty of concealment, rendering a discovery and accounting necessary.

2. SAME—JURISDICTIONAL AMOUNT—SEVERAL COMPLAINANTS.

The theory of the bill being that a portion of the heirs entitled to distribution may maintain the action for their respective proportions without joining others, in order to give jurisdiction to the circuit court the interest of each independent of others must amount to the sum of $2,000; and an allegation in the bill that "the amount of [the property in controversy] is unknown to said complainants, but much more than $2,000, over and above all just debts and funeral expenses," is not sufficient to confer jurisdiction.

3. PARTITION—IN EQUITY—DISPUTED TITLE.

In a partition suit, either at law or in equity, the title to the land cannot be litigated: and when the bill avers that defendant, one of the heirs at law of the complainants' intestate, possessed himself of the intestate's land on the latter's death, without authority of law, and has since held the same, except such part as he may have disposed of or given to his co-defendants, to the entire exclusion of complainants, denying that there was any such property belonging to intestate, and refusing to give complainants their share; living on and cultivating such real estate as defendants own; using said property as his own; making great profits thereon, no part of which has he ever shared with complainants,—the bill shows such an adverse holding under claim of right amounting to an ouster among tenants in common as destroys the unity of possession, and takes away the right to partition.

4. SAME—PARTIES—DEFENDANTS—FEDERAL COURTS.

When an action for partition is instituted in the United States court, all the plaintiffs on one side must be non-residents of the state in which the suit is brought, and jurisdiction cannot be conferred by making a necessary party plaintiff a defendant, who is a resident of the state, whose interests are all in common with those of the complainants, and against whom no antagonistic act is alleged.

5. LIMITATION OF ACTIONS—PLEADING THE STATUTE.

When it affirmatively appears on the face of a bill that the statutory period has run, the objection may be raised by demurrer; but, as this objection is personal to defendant, if he does not raise it by demurrer or plea, it is deemed to be waived.

In Equity. On demurrer to bill.

Bill by Ernest A. Rich and others, as heirs at law of William Bray, against Thomas Bray and Minnie G. Kinsey, also heirs at law of said William Bray, to compel an accounting of all properties in the hands of Thomas Bray coming from said William Bray, and for distribution of the estate among the heirs.

*D. B. Henderson* and *J. C. Meredith*, for complainants.

*Smith, Silver & Brown*, for defendants.

PHILIPS, J. This is a bill in equity. The petitioners are non-residents of the state, and the respondents are citizens of this district. The bill alleges, in substance, that William Bray, the maternal grandfather of complainants, died intestate at Macies county, Mo., on or about the 15th day of February, 1883; that he died seised and possessed of a large amount of real estate and personal property, undisposed of by will or otherwise; that he left no widow, and that no letters of administration have ever been granted on his estate; that complainants and respondents, and other unknown heirs, citizens of the dominion of Canada, not made parties hereto, are his sole heirs at law; that on his death the respondent Thomas Bray took possession of the entire estate of decedent, consisting of large tracts of land and personal property, mill machinery, stores, and appliances, household furniture, horses, wagons, and implements of husbandry, farm products, live-stock, and other chattels, as also the rents, products, and profits of said mill and farm, moneys, notes, mortgages, and bonds, and has ever since continued to hold, use, and enjoy the same as his own property, to the exclusion of the other rightful heirs of the decedent; that he has made large profits out of said property, concealing from the complainants the fact of the existence of such property, whereby they have sustained great loss by the acts and misrepresentations of said Thomas Bray. The prayer of the bill is that said Thomas Bray be declared a trustee of said estate for the said heirs, and that he be required to render a full and true account of all properties, real and personal, that so came into his hands, and account for the increase and profits thereof; that distribution be decreed to be made of the entire estate among the lawful heirs; and for all proper relief. To this bill the respondent Thomas Bray demurs for various grounds of objection, which, so far as deemed essential, will be considered in their order.

1. It is objected that complainants have no standing in a court of equity, for the reason that they have an adequate and complete remedy at law It may be conceded that if this action had been instituted in the state court, it would fail, so far as the personal property is concerned, for the reason that the probate system under the state statute has in this respect largely superseded the ancient equity jurisdiction of the chancery courts for discovering, marshaling and distributing the estates of decedents at the suit of the heir or creditor. The administration law of the state affords adequate remedies and facilities to accomplish the object sought by this bill, to have an executor *de son tort* disclose the assets in his hands, and for their summary recovery, administration, and distribution by either a private or public administrator, rendering a resort to a court of equity unnecessary. *Titterington* v. *Hooker*, 58 Mo. 596; *Pearce* v. *Calhoun*, 59 Mo. 274; *Johnson* v. *Beazley*, 65 Mo. 251; *Davis* v. *Smith*, 75 Mo. 228; *French* v. *Stratton*, 79 Mo. 562, 563. See, also, discussion in *Rozelle* v. *Harmon*, 29 Mo. App. 569. It cannot be questioned, however, that such a bill would have come within the cognizance of the court of chancery in England, as that jurisdiction was exercised at the time of the adoption of our federal constitution. In *Pratt* v. *Northam*, 5 Mason, 105, Judge STORY observed:

"It has been for a great length of time settled that in cases of the administration of assets courts of equity have a concurrent jurisdiction with courts of law. The original ground seems to have been that a creditor or other party in interest had a right to come into chancery for a discovery of assets; and, being once rightfully there, he should not be turned over to a suit at law for final redress. And for the purposes of complete justice, it became necessary to conduct the whole administration and distribution of the assets under the superintendence of the court of chancery, when it once interfered to grant relief in such cases."

See *Thompson* v. *Brown*, 4 Johns. Ch. 619. The United States courts derive their equity as well as common-law jurisdiction from the federal constitution and laws. Even in states where there are no chancery courts the equity jurisdiction of the federal courts none the less obtains. The state legislature cannot by the adoption of any system of administering justice restrict the constitutional jurisdiction of the federal court. *Lorman* v. *Clark*, 2 McLean, 568; *Robinson* v. *Campbell*, 3 Wheat. 212. As said by Mr. Justice WAYNE in *Barber* v. *Barber*, 21 How. 592:

"It is no objection to equity jurisdiction in the courts of the United States that there is a remedy under the local law, for the equity jurisdiction of the federal courts is the same in all of the states, and is not affected by the existence or non-existence of an equity jurisdiction in the state tribunals. It is the same in nature and extent as the jurisdiction of England, whence it is derived."

So it has been repeatedly held that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the state which prescribes the modes of redress in their courts, or which regulate the distribution of their judicial power. *Hyde* v. *Stone*, 20 How. 175; *Suydan* v. *Broadnax*, 14 Pet. 67. In *Payne* v. *Hook*, 7 Wall. 430, Mr. Justice DAVIS uses this language:

"If legal remedies are sometimes modified to suit the changes in the laws of the states and the practice of their courts, it is not so with equitable. The equity jurisdiction conferred on the federal courts is the same that the high court of chancery in England possesses; is subject to neither limitation nor restraint by state legislation; and is uniform throughout the different states of the Union."

I do not wish to be understood as holding, by anything here said or maintained, that where an estate is in process of administration under the state statute, in the absence of any matters of fraud, and the like, which would call into action the special powers of courts of equity for the attainment of entire justice, that a party entitled to sue in this court on the grounds of citizenship could call upon it to arrest the jurisdiction of the state court, already acquired, and take upon itself the administration and distribution of the estate. And where relief is sought on the equity side of the court, the bill, of course, should present some of the exceptional facts which evoke and call into exercise the extraordinary powers of a court of chancery. The bill in this case shows that there has been no administration after the lapse of five years; that Bray has wrongfully appropriated the whole estate to his use, traded and speculated upon it, changed

the original form of some of the property, made profits thereon, and been guilty of concealment, rendering a discovery and accounting necessary. These are matters coming within the customary jurisdiction of courts of equity.

2. It is also objected that it does not sufficiently appear that the matter in dispute exceeds the sum or value of $2,000. As the amount in dispute is a jurisdictional fact, it should be made to appear affirmatively on the face of the bill. The only allegation from which any idea of the value of the property in controversy can be derived is contained in the following statement: "The amount of which is unknown to said complainants, but much more than two thousand dollars, over and above all just debts and funeral expenses." How much more than $2,000? This averment could be true if the amount were only $2,100, or less. Is this sufficient to give this court jurisdiction? There are a large number of heirs or distributees to share in this property; and it is manifest on the face of the bill that the interest of no one of them, nor the interest of all the complainants combined, amounts to the sum in suit. Some of the heirs who are admitted to be distributees, and whose respective shares would have to be reserved for them, are not made parties to this suit. Therefore the position necessarily assumed by complainants is, that their respective interests and rights are so far separable that any number of them may proceed with the litigation without the others. I understand the rule in such case to be that, where two or more parties may thus join, as a matter of convenience to prevent multiplicity of suits, in one action, for the ascertainment and distribution of their respective interests in a common fund, the interest of each independent of the others, must amount to the sum of $2,000, to give jurisdiction to this court. *King* v. *Wilson*, 1 Dill. 556–568; *Massa* v. *Cutting*, 30 Fed. Rep. 1; *Woodman* v. *Latimer*, 2 Fed. Rep. 842; *Seaver* v. *Bigelows*, 5 Wall. 208–210; *Terry* v. *Hatch*, 93 U. S. 44; *Chatfield* v. *Boyle*, 105 U. S. 231–234. The case presented by this bill is, in my opinion, quite distinguishable in principle from that involved in *Davies* v. *Corbin*, 112 U. S. 36, 5 Sup. Ct. Rep. 4. That was a proceeding by *mandamus* at the relation of several judgment creditors to compel the levy of taxes by the proper county officer to raise the fund necessary to satisfy such judgments. In such case the officer is to collect a tax, not for the benefit of any one creditor alone, but for all. As said by the court:

"A payment of the judgment of one creditor would not relieve him from his obligation to collect the whole tax. The object of the proceeding is, not to raise the sums due the relators, but to raise the whole tax of ten mills on the dollar. As the matter stands, each relator has the right to have the whole tax collected for the purpose of distribution among all the creditors. It is apparent, therefore, that the dispute is between the tax collector on one side and all the creditors on the other, as to his duty to collect the tax as a whole, for division among them, after the collection is made, according to their several shares."

But it cannot be maintained here that the payment by the respondent Bray of the shares of complainants would not abate this action; al-

though there are other heirs. This bill, as already stated, is framed upon the theory that a portion of the heirs entitled to distribution may maintain the action for the recovery of their respective proportions, bringing the case directly within the rule established by the authorities cited. In the tax-levy case the judgment creditors have no common fund existent until after levy and collection; whereas in the case at bar the fund already existed before suit, of which each complainant is entitled to a definite portion. The demurrer to the bill on this ground is well taken. *Maxwell* v. *Kennedy*, 8 How. 210.

3. In respect of the real estate mentioned in the bill there is serious difficulty. There is no question of the jurisdiction of a court of equity to make partition of lands, in which action all the equities between the coparceners may be considered and adjusted. But I understand the rule to be likewise inflexible that, in a partition suit, either at law or in equity, the title to the land cannot be litigated. Where there is an adverse holding under claim of exclusive right, amounting to an ouster among tenants in common, it destroys the unity of possession, and takes away the right of partition. Resort must first be had to the action of ejectment at law. "If one coparcener disseise another, during this disseisin a writ of partition doth not lie between them for *non tenant insimul et pro indiviso.*" Co. Litt. 167*a;* 5 Com. Dig. 225; 16 Vin. Abr. 225. So it is said in *Adam* v. *Iron Co.*, 24 Conn. 230:

"The rule at common law is well established that where the writ of partition would lie only between coparceners, the plaintiff must be in possession, or seised of the land when the writ was brought; and since the remedy by partition has been extended to joint tenants and tenants in common, the same rule obtains, whether the remedy is sought by writ or bill in equity."

And this rule has been applied to an adverse holding by one tenant in common adversely to his co-tenant. *Law* v. *Patterson*, 1 Watts & S. 185; *Clapp* v. *Bromagham*, 9 Cow. 560; *Lambert* v. *Blumenthal*, 26 Mo. 471; *Ellis* v. *Davis*, 109 U. S. 493, 3 Sup. Ct. Rep. 327. What will amount to such ouster by one tenant in common of his co-tenants has been a much-debated question by the courts. It requires stronger evidence, or rather, more affirmative acts, to constitute an ouster by one such tenant of his co-tenants than against a stranger. As the possession and seisin of one tenant in common is the possession and seisin of the others, his possession is *prima facie* not adverse to his co-tenants. Judge Story, in *Clymer's Lessee* v. *Dawkins*, 3 How. 689, says:

"This presumption will prevail in favor of all, until some notorious act of ouster or adverse possession by the party so entering into possession is brought home to the knowledge or notice of the others. Such a notorious ouster or adverse possession may be by any overt act *in pais,* of which the other tenants have due notice, or by the assertion, in any proceeding at law, of a several and distinct claim or title to an entirety of the whole land, which, in contemplation of law, is known to the other tenants."

This question was fully considered, and with characteristic ability, by Judge Napton, in *Warfield* v. *Lindell*, 30 Mo. 272, from which we make

the following quotation, as expressive of what we conceive to be a conservative and correct view:

"To constitute an adverse possession of one tenant in common against his co-tenants, there must be some notorious act asserting an entire ownership. It is further said in some cases that this act must be brought home to the knowledge of the co-tenant. This, we suppose, depends upon the nature of the act. If it consists altogether of a mere verbal assertion of entire ownership, such an assertion could not with any propriety be regarded as an act of adverse possession of which the co-tenant was bound to take notice, unless made to him, or communicated to him. A declaration to a mere stranger amounts to nothing, unless that declaration is brought to the knowledge of the co-tenant. But when the act is of such a nature as the law will presume to be noticed by persons of ordinary diligence in attending to their own interests, and of such an unequivocal character as not to be easily misunderstood, it is not believed to be necessary that any positive notice should be given to the co-tenant, or that it devolves upon the possessor to prove a probable actual knowledge on the part of the co-tenant. It is sufficient that the act itself is overt, notorious; and if the co-tenant is ignorant of his rights, or neglects them, he must bear the consequences."

The bill in the case at bar in substance avers that the respondent Thomas Bray possessed himself of this land on the death of William Bray without authority of law, and has ever since held the same, except such part as he may have disposed of, or given to the co-respondent Minnie G. Kinsey, to their entire exclusion; denying that there was any such property belonging to William Bray, and refusing to give complainants their share; living on and cultivating such real estate as his own; using said property for his own private gain in every way possible; making great profits thereon, no part of which has he ever shared with complainants. Construing the pleading most strongly against the pleader, the legitimate inference to be drawn from the concessions of the bill is that the ouster was complete. There was not only an adverse holding, but an open occupation of the property, to the exclusive use and benefit of respondent, with the denial of complainants' right to any share therein; acts so overt and notorious as to imply notice to the co-tenants. In fact, his adversary character in the occupancy and exclusive claim of right is unduly made the basis of the relief sought by the respondents, and therefore this action cannot be maintained in respect of the real estate.

4. It is next insisted by the respondents that complainants' right of action as to the personal property is barred by the statute limiting such causes of action to five years after the right of action accrued. It may be conceded that where it affirmatively appears on the face of the bill that the statutory period has run, the objection may be raised by demurrer; but on examination of the demurrer no such ground is assigned therein, and as this is an objection personal to the respondent, if he does not raise it by demurrer or plea, it is deemed to be waived by him. Under the Missouri statute advantage cannot be taken of the statute of limitations otherwise than by plea, except in those instances where the statute creates an absolute bar by lapse of time without any exception. *Bank* v. *Winslow*, 30 Fed. Rep. 488.

5. There is another fatal objection to the jurisdiction of this court. The defendant Minnie G. Kinsey is joined as a co-respondent with Thomas Bray. She is a citizen of this state and district. She is an heir equally with complainants. No wrong is alleged against her. Her interests, as appear from the bill, are in harmony with those of the complainants. She is a necessary party to any partition proceeding. *Dameron* v. *Jameson,* 71 Mo. 97; *Barney* v. *Baltimore City,* 6 Wall. 280. Why is she joined as a co-respondent? No reason whatever is assigned therefor; and I apprehend that none other can be assigned than the fact that she could not be joined as a co-complainant without ousting the jurisdiction of this court, for the reason that she is a citizen of the state of Missouri, and of this federal district. The question, therefore, presents itself on the face of this bill: Can the complainants by this maneuver bring this controversy into this jurisdiction? The law is that all the plaintiffs on one side, where the action is instituted in the United States court, must be non-residents of the state in which the suit is brought. It would, in my opinion, be a palpable fraud on our jurisdiction if such a subterfuge could be resorted to successfully by making one of the necessary parties a defendant whose interests are all in common with those of the complainants, and against whom no antagonistic act is alleged. This question has undergone thorough examination in the case of *Bland* v. *Fleeman,* 29 Fed. Rep. 669, in a case quite parallel in principle; and, approving the principle therein announced, as applied to the facts of this case, I hold that jurisdiction cannot thus be thrust upon this court.

6. There are other objections made to this bill, but they are not of sufficient importance to justify the prolongation of this already too long opinion. Demurrer sustained.